## WISDOM v. KEEN.
### No. 7036.

Circuit Court of Appeals, Fifth Circuit.

Feb. 26, 1934.

Hugh V. Wall, of Brookhaven, Miss., for appellant.

Hermon Dean and Thomas Brady, Jr., both of Brookhaven, Miss., for appellee.

Before BRYAN, SIBLEY, and HUTCHESON, Circuit Judges.

SIBLEY, Circuit Judge.

This is another of the multiplying cases in which the ratable distribution to all creditors of the assets of a failed national bank under 12 USCA § 194 is sought to be disturbed by the assertion of a lien upon them because of a commingled trust fund. The facts are simple. Keen was on a trade to purchase some land, and on January 3, 1931, turned over to the president of First National Bank of Brookhaven several checks payable to the bank amounting to $1,200 and a note for $200 payable to the vendor, all to be delivered to the vendor on his delivering an approved title. A deposit slip was issued reading: "Deposited with First National Bank for account of Trust Account checks as follows by E. W. Keen to be paid to Hyman Mercantile Company when abstract of certain piece of property containing 230 acres is approved by Keen or his attorney: $1200.00." The bank president stated that the bank was the custodian of the fund and that it was a trust account, and if the bank failed the money would be there to carry out the trust. On June 10th a more formal agreement was made and signed for the bank by its president, stating: "It is understood and agreed that the sum of $1400.00, $1200.00 in cash and one note for $200.00 payable to Hyman Mercantile Company, is held in escrow by the First National Bank and the same is to be delivered to Hyman Mercantile Company on the execution and delivery of the deed to the First National Bank." One check for $305.95 was on another bank and was collected. The other checks were on the First National Bank itself and were presumably charged to the drawers, but no actual cash was segregated and specially deposited. The bank failed on January 12th, having had at all times since January 3d more than $1,200 in its vault. On the last day $30,000 were deposited and $60,000 with-

drawn. Cash of about $15,475 was among the deposits and $15,708 in cash came to the receiver, together with about $12,000 from deposits in correspondent banks. Keen afterwards became entitled to have back the $1,200 and demanded it of the receiver, who contended that Keen was only a common creditor. The District Court awarded a preferential lien on the cash in the receiver's hands, and the receiver appeals.

The $305.95 collected from another bank was successfully traced into a correspondent bank and the lien fixed upon the deposit there is not contested by the receiver. As to the remaining $894.05 the District Court said: "The parties did all they could to establish an express trust with a cash res except actually to segregate the cash themselves. Their agreement with the bank through its president had the effect of such segregation and appropriation. In accepting the checks on itself as cash the bank became a bailee for the amount of such cash." In support of the view thus clearly stated, our cases of Davis v. McNair, 48 F.(2d) 494; Dixon v. Hopkins, 56 F.(2d) 783; and City of Miami v. First Nat. Bank of St. Petersburg, 58 F.(2d) 561, were cited. It is supported by some of the things said in Davis v. McNair and City of Miami v. First Nat. Bank of St. Petersburg in ruling on the sufficiency of pleadings; but each of these cases has now been disposed of on the merits and its effect made clear. McNair v. Davis (C. C. A.) 68 F.(2d) 935; First Nat. Bank of St. Petersburg v. City of Miami, 69 F.(2d) 346. The view that when a bank becomes obligated to collect for another person checks drawn on itself and makes entries of their collection, it must in equity be considered to have done what it should have done, to wit, to have collected them in cash though afterwards commingling the customer's cash thus collected with its own, so that a traceable res is brought into being with title vested in the customer, has been adopted by a growing number of state courts and is said to be the majority view in an elaborate examination of the cases in 82 A. L. R. page 97. It was pressed to its furthest extent in the Fourth Circuit in Schumacher v. Harriett, 52 F.(2d) 917, 82 A. L. R. 1, and Schumacher v. Brinson, 52 F.(2d) 821. Otherwise the federal cases have been to the contrary. 82 A. L. R. 101. Schumacher v. Brinson was appealed and reversed as Blakey v. Brinson, 286 U. S. 254, 52 S. Ct. 516, 76 L. Ed. 1089, 82 A. L. R. 1288. We refused to follow Schumacher v. Harriett in Pottorff v. Key (C. C. A.) 67 F.(2d) 833. At the conclusion of the opinion in Texas & Pacific R. Co. v. Pottorff, 54 S. Ct. 416, 78 L. Ed. ——, the Supreme Court again indicates the necessity of an identifiable trust res in order to create a trust by misconduct as distinguished from a general liability in contract or tort. Whether the question be one of general equity jurisprudence or of the application of the federal law relating to insolvent national banks, the views of the federal courts must in such courts be controlling.

This, then, is a case in which the bank and its customer definitely agreed that $1,200 in cash should be held by the bank in escrow, to be delivered (not paid) on a condition and checks were given to the bank on which it was to get the cash out of its own vault. The obligation was perfect to segregate and hold the cash. Equity if dealing with the bank alone might well consider that it had done what it should have done and might well hold it to the consequences. American National Bank v. Miller, 229 U. S. 517, 33 S. Ct. 883, 57 L. Ed. 1310. But in dealing with the distribution of the assets of an insolvent national bank and with the requirement of ratable dividends to all claimants a more stringent adherence to what was actually done is proper. Here the bank agreed to segregate a trust res but never did it. By their mutual intent the bank's relation to Keen was that of a trustee rather than a debtor, but there is still no identifiable trust res traceable as such, but only a liability for a breach of trust in failing to create the res. This liability, absent a statutory priority or lien, has no higher dignity than other general liabilities. As to every general creditor the bank has failed to do what it ought to have done and what it promised to do. The federal statute puts all such claimants on an equality. Even claims due the United States have no preference. Cook County National Bank v. United States, 107 U. S. 445, 2 S. Ct. 561, 27 L. Ed. 537.

The judgment is reversed, and the case is remanded for further proceedings not inconsistent with this opinion.